IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 8, 2008

**STATE OF TENNESSEE v. TONY DRAINE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-02472     James C. Beasley, Jr., Judge**

---

**No. W2007-01438-CCA-R3-CD  - Filed August 18, 2008**

---

The defendant, Tony Draine, was convicted by a Shelby County jury of one count of theft of property over $10,000, a Class C felony, and sentenced to thirteen years in the Department of Correction.  On appeal, the defendant challenges the sufficiency of the evidence, specifically with regard to the requisite mental state.  After review of the record, we conclude that the evidence is sufficient and affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Brett Stein, Memphis, Tennessee, for the appellant, Tony Draine.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

On June 3, 2005, Joseph Bradley was hired by Bertha Burney of D & C Trucking of College Park, Georgia, and dispatched in truck number 516, a 2001 Freightliner conventional tractor, with a fifty-three-foot dry box trailer.  The VIN number of the purple tractor was 1FUJA3CGX1LG44595. According to Burney, the tractor, when purchased, was valued at $60,000 to $70,000, and the 1995 MONO trailer was valued at $15,000 to $20,000.  The tractor was operated by key, which Bradley was in possession of when he was dispatched.  Burney spoke with Bradley over the next three days, with the last communication being on June 6, 2005.  Bradley did not deliver the load of janitorial supplies as scheduled, and Burney never heard from Bradley again.

On June 7, 2005, Officer Carlo Foster, assigned to the Auto Cargo Task Force of the Memphis Police Department, was investigating the theft of a tractor and trailer, which, according to the information he received, was supposed to be parked at a BP service station located at Lamar and Winchester. Foster and other officers began surveillance of the area at approximately 7:30 p.m. Upon their arrival, Foster observed a purple 2001 Freightliner tractor with an attached fifty-three-foot dry box trailer. He approached the unoccupied truck and determined that the VIN number of the vehicle was 1FUJA3CGX1LG44595.

At approximately 10:00 p.m., Foster observed some individuals "hanging around" the truck, going back and forth between the tractor and some apartments located across the street. Shortly thereafter, Foster observed the defendant walk from the apartments toward the truck. The defendant gave a set of keys to a man, later identified as Larry Norman. Norman got into the tractor, drove around the block, and returned to the parking lot. Both Norman and the defendant were detained.

Officer Foster checked to see if the tractor had been reported stolen and contacted the owners of the tractor, who informed him that neither the defendant nor Norman had permission to be in possession of the tractor or trailer. The defendant and Norman were then placed under arrest.

The defendant, along with Norman, was indicted by a Shelby County grand jury for one count of theft of property over $60,000. Following a jury trial, the defendant was convicted of the lesser included offense of theft of property over $10,000 and was subsequently sentenced as a Range III, persistent offender to a term of thirteen years in the Department of Correction. The trial court denied the defendant's motion for new trial, and this timely appeal followed.

**Analysis**

On appeal, the defendant contends that the trial court erred in denying his motion for judgment of acquittal at the close of the State's proof and that no rational juror could have found the defendant guilty beyond a reasonable doubt. Specifically, he argues that the State failed to establish the requisite culpable mental state and that the circumstantial evidence failed to exclude every reasonable hypothesis except guilt.

Initially, we note that a motion for judgment of acquittal requires that the trial court determine the sufficiency of the evidence. Tenn. R. Crim. P. 29(a). Accordingly, the standard of review for a motion for judgment of acquittal is the same as that utilized when analyzing the sufficiency of the convicting evidence. *State v. Blanton,* 926 S.W.2d 953, 957-58 (Tenn. Crim. App. 1996). Thus, the defendant's issue on appeal is treated as a challenge only to the sufficiency of the evidence. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn

therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). Moreover, to warrant a criminal conviction on circumstantial evidence alone, the evidence "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citation omitted).

According to the statute, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2006). A reading of the defendant's argument establishes that he is challenging the State's proof only with regard to the required culpable mental state, as his argument is that "without any other proof tending to connect the [defendant] with the crime of the theft of the vehicle, under the law of circumstantial evidence . . . an equally reasonabl[e] inference can be drawn that passing the keys was the result of a completely innocent act." As the record more than sufficiently establishes that the defendant exercised control over the tractor, by his possession of the keys required for its operation, and that he did so without the owner's consent, we agree that the ultimate question for our determination is whether the defendant possessed the vehicle with the requisite criminal intent to deprive the true owner of the tractor. In short, the issue is whether the State established that the defendant knew that the tractor was stolen.

For purposes of the theft statute, "a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-106(a)(20) (2006). We note that a defendant's intent or mental state is rarely capable of proof by direct evidence and must usually be inferred from the

circumstances surrounding the offense. *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). This is particularly true in theft offenses where the prosecution is initiated upon a theory of exercising control over stolen property. *State v. Brandon McCaslin*, No. W2004-02539-CCA-R3-CD (Tenn. Crim. App. at Jackson, Sept. 6, 2005).

Nonetheless, it is well-established in Tennessee that the possession of recently stolen property gives rise to an inference that the possessor has stolen it or had knowledge the property was stolen and may, in light of surrounding circumstances, support a conviction for theft. *State v. Land,* 681 S.W.2d 589, 591 (Tenn. Crim. App. 1984); *State v. Hamilton,* 628 S.W.2d 742, 746 (Tenn. Crim. App. 1981) (citations omitted). "Recently" is a relative term with no fixed meaning and depends upon the nature of the property and the facts and circumstances shown by the evidence. *State v. Anderson*, 738 S.W.2d 200, 202 (Tenn. Crim. App. 1987). The longer the period of time since the theft the more doubtful the inference. *Bush v. State*, 541 S.W.2d 391, 397 (Tenn. 1976).

In support of his argument, the defendant relies upon *State v. Untwon Bishop and Emanuel Cobb*, No. 2C01-9508-CC-00243 (Tenn. Crim. App. at Jackson, Mar. 19, 1997) and *Thomas v. State*, 463 S.W.2d 687 (Tenn. 1971). However, the defendant's reliance upon these cases is misplaced. In *Bishop*, a theft conviction was reversed because there was no direct evidence connecting the defendant to the theft. In the instant case, however, direct evidence was presented, specifically that the defendant was in possession of the keys to the stolen tractor. The facts of *Thomas* are more analogous to the defendant's case, as in *Thomas* there "was no evidence whatsoever of any facts or circumstances connecting Thomas with the crime other than his possession of the [stolen] wheelbarrow twenty-odd days after the crime." According to the defendant, there is likewise no evidence connecting him to the crime other than his possession of the keys three days after the theft. He relies upon the reversal of the conviction in *Thomas,* contending that "the time should not make any difference." We disagree, as it has been specifically held that a longer period of time since the theft makes the inference more doubtful. *Bush*, 541 S.W.2d at 397. Moreover, his argument ignores that the theft conviction in *Thomas* was reversed not on a sufficiency challenge but upon an improper jury charge regarding the presumption of possession.

Viewing the evidence in the light most favorable to the State, we conclude that it is more than sufficient to support the conviction. Burney testified that the value of the tractor when purchased was between $60,000 and $70,000 and that the value of the trailer was approximately $15,000 to $20,000. The defendant was in possession of the keys required to operate the tractor, and Burney specifically testified that the defendant did not have permission to be in possession of the tractor or trailer. During the entire period of surveillance of the stolen tractor, only the defendant and Norman approached. Moreover, because the defendant was in possession of the recently stolen property, based upon his possession of the keys, the inference that he had stolen it or had knowledge that the property was stolen arose. The proof established that the theft occurred no more than three days prior to the time in which the defendant was in control of the tractor. Additionally, there was no reasonable or satisfactory explanation given for the defendant's possession. *Cf. State v. Rod Mills*, No. E2006-02207-CCA-R3-CD (Tenn. Crim. App. at Knoxville, June 5, 2007) (theft conviction reversed where defendant gave explanation for his possession of truck, which was corroborated by

others). Based upon these facts, along with the inference which was properly drawn from the possession of recently stolen property, we conclude that a rational juror was justified in finding beyond a reasonable doubt that the defendant knowingly obtained or exercised control over the tractor, with intent to deprive the owner of the property, without the owner's effective consent and that the evidence was sufficient to exclude all other reasonable hypothesis except that of guilt.

## CONCLUSION

Based upon the foregoing, the judgment of conviction is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE