**STATE of Tennessee, Appellee,**

v.

**Gary FRITTS and Eddie Fritts, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 30, 1981.

Frank P. Miller, Bristol, for appellants.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Sr. Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., H. Greeley Wells, Asst. Dist. Atty. Gen., Blountville, for appellee.

## OPINION

SCOTT, Judge.

The defendants/appellants, who are brothers, were charged in separate two count indictments with receiving and concealing stolen property valued at over $200.00. Both was convicted of concealing stolen property valued at more than $200.00. Each received a sentence of not less than nor more than three years in the state penitentiary. Each applied for probation which was denied to both. In their joint brief they have raised five issues. Because of our resolution of one of the issues, it is unnecessary to consider the others.

The appellants contend that the trial judge erred by limiting their proof of the fair market value of the stolen property by independent witnesses, thus depriving them of the right to have before the jury proof

that the transaction was not one which would place a reasonable person on notice that the property was stolen.

The stolen property to which both counts of each indictment related was a Pontiac Trans Am automobile engine, alleged to be valued at more than $200.00, and allegedly the property of Sherwood Chevrolet, Inc.

The state's proof consisted of undercover investigators who purchased the engine from Eddie Fritts. Gary Fritts participated in the transaction by hauling the motor on the back of a wrecker from a warehouse to the service station where the transaction was consummated.

Both appellants testified and admitted the sale to the undercover agents. However, their theory was that they did not know that the motor was stolen. They contended that the motor was purchased from another man for a full and fair consideration, during the regular course of business at Edgemont Gulf Service Station, where Eddie Fritts also operated a wrecker service, auto repair shop, and salvage lot.

During the presentation of their case the appellants called Buford Gentry, who had been in the wrecker and used parts business for about eight years. First, Mr. Gentry testified as a character witness for each of the appellants. Then the following occurred as defense counsel sought to question Mr. Gentry about the fair market value of Pontiac motors in the Bristol area:

Q. Now, Mr. Gentry, do you from time to time buy used motors?

A. Yes, sir.

Q. Are you familiar with the fair market value of '77, '78 Pontiac motors in the Bristol area?

A. Well, I say that depends on, you know, person selling and the person buying.

Q. If one approached you and wanted to sell a—

GENERAL WELLS: Objection, Your Honor. That calls for a conclusion and I don't think it's . . . .

THE COURT: Sustained.

MR. MILLER: May I rephrase the question, Your Honor? I don't—

THE COURT: Well, the issue is this particular motor involved in this case and in light of the testimony relative to the actual selling value, I'm going to overrule your—I'm going to sustain the State's objection to this line of questioning.

■ In order to convict one for concealing stolen property, the state must prove (1), that the goods were stolen; (2), that the defendant took possession of the goods; (3) with knowledge that they were stolen; and (4) that the goods were concealed. *State v. Hatchett*, 560 S.W.2d 627, 629 (Tenn.1978).

■ Tennessee follows the generally approved rule that proof of possession of recently stolen goods gives rise to the inference that the possessor has stolen them. *Bush v. State*, 541 S.W.2d 391, 394 (Tenn. 1976). This inference is equally applicable to cases involving receiving stolen goods. *Cook v. State*, 84 Tenn. 461, 1 S.W. 254, 255 (1886).

■ The inference does not vanish when the defendant comes forward with an explanation. It remains to be weighed by the jury against the evidence offered by the defendant to explain his possession of the recently stolen property. The jury must weigh the explanation to determine whether it is satisfactory. The jury is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference. *Bush v. State*, supra, at 395. The reasonableness of an explanation offered by one found in possession of recently stolen property is primarily a question for the jury to determine from all of the evidence, the fact of possession being usually but one item of proof. *Cameron v. State*, 546 S.W.2d 261, 263 (Tenn.Cr. App.1976).

■ Tennessee adheres to the objective test as to guilty knowledge, first enunciated in *Wright v. State*, 13 Tenn. (5 Yerg.) 154, 159 (1833), restated in 2 Wharton's Criminal Law and Procedure § 568, p. 281, cited in *Tackett v. State*, 223 Tenn. 176, 443 S.W.2d 450, 451 (1969):

(T)he existence of guilty knowledge is to be regarded as established when the circumstances surrounding the receipt of the property were such as would charge a reasonable man with notice or knowledge or would put a reasonable man upon inquiry which if pursued would disclose that conclusion.

The possession must be explained in a straightforward, truthful way. The jury is the judge of the reasonableness of the explanation. *Tackett v. State*, Id., at 443 S.W.2d 453.

In order to present their theory to the jury, the appellants attempted, through Mr. Gentry, to show the fair market price of similar motors in the Bristol area. The trial judge's ruling prevented the jury from hearing this testimony. As to the question of whether a stolen item is valued at more or less than $200.00, the trial judge's observation was correct. The issue in that case is always, "What was the value of this particular item"? However, the issue here is guilty knowledge that the property was stolen. Our research has revealed no reported Tennessee case squarely in point. We must turn to other persuasive authorities for guidance.

■ Evidence of an inadequate purchase price for the stolen goods is admissible in behalf of the prosecution to show guilty knowledge. On the other hand, in order to prove lack of guilty knowledge, the accused may show that he paid a fair price for the goods. 76 C.J.S. (Receiving Stolen Goods) § 18c, p. 39.

In *Andrews v. People*, 60 Ill. 354, 356 (1871), the defendant, a secondhand clothing dealer, was indicted for receiving stolen goods consisting of various coats and shirts. The thief testified that he sold the goods to the defendant for about one-third of their value. The defendant offered proof that those engaged in the secondhand clothing business did not pay full prices for clothing; that they have to sell new clothing at the price of secondhand goods; and that when purchases are made late in the season they are made at reduced prices. The defendant offered two witnesses who were acquainted with the clothing trade, both the wholesale and secondhand branches. Their evidence was excluded by the trial judge. On appeal the Court noted that:

(H)ad their evidence been admitted, the case would have been presented to the jury on all of the facts calculated to shed light on the transaction. It would have shown the usage and necessities of the trade, and the jury would have had this, with the other evidence, from which to determine the motives which operated on accused when he purchased.

In *Estes v. State*, 23 Tex.App. 600, 5 S.W. 176, 177 (1887), the defendant was charged with receiving two stolen horses. The Court found that his explanation of the acquisition and the possession of the horses was a reasonable one and was not disproved, but was strongly corroborated by the other evidence in the case. The Court noted that there was no satisfactory evidence, either direct or circumstantial, that at the time the defendant purchased the horses that he had any knowledge, or even suspicion, that the horses were stolen property. The fact that he purchased the horses paying "almost, if not quite, their fair value" was abundantly established in the proof. This circumstance, together with the other circumstances of the case, required the Court to reverse and dismiss.

In *People v. Rubin*, 361 Ill. 311, 197 N.E. 862, 870 (1935), the Court found that where goods are purchased for less than their value, such fact is a circumstance tending to show the guilt of the defendant. The converse of the rule follows. Where the proof discloses that the property was purchased at a fair price, such circumstance tends to refute guilty knowledge.

In *United States v. Werner*, 160 F.2d 438, 443 (2nd Cir. 1947), the late Judge, Learned Hand, surely one of the greatest jurists ever, considered a case involving the possession, with guilty knowledge, of four cases of razor blades. Judge Hand addressed all of the various aspects of the proof and concluded:

From what we have said so far it would follow that the convictions should be affirmed, and so they would be but for the last objection: the exclusion of the testimony of experts as to the value of the blades. In prosecutions for receiving stolen property for obvious reasons one of the most telling indices of guilt is a low price paid by the receiver. Thieves are in no position to bargain; they must rid themselves of their loot as quickly as possible and their willingness to sell cheap betrays, or should betray, their predicament. On the other hand evidence that the receiver paid the right price, or close to the right price, for the goods is equally persuasive of his innocence; for no one is likely to incure the risk of buying stolen goods, who has little to gain. This the prosecution does not deny; it defends the judge's ruling on the ground that he did admit some testimony of the value of the blades; and that the offer was only of their market value which was necessarily hypothetical as they had no domestic market. We cannot accept either as an adequate excuse. The judge ruled out testimony as to the market value of persons particularly qualified to know what the blades should bring, which was far more probative than that which got in. Moreover, it was no answer to say that there was no market and that their opinions were hypothetical; for, except when established by markets, like stock or produce exchanges, value is usually nothing more than an honest guess, estimate, or surmise. For that very reason it was important to know how nearly the defendants' guess corresponded with that of those best versed in the matter.

■ We hold that the fair market value of similar goods passing in the trade is a relevant matter and is probative of the question of whether the accused knew that the property was stolen. Apart from his own testimony, the only way that an accused can establish the fair market value of similar items passing in the trade is to call expert witnesses who from their experience, training, and expertise can testify as to the fair market value. Since value is frequently a matter of opinion, the prosecution is entitled to extensively cross-examine the expert witness as to his expertise and other bases for that opinion. The jury then can consider this proof along with all the other facts and circumstances surrounding the receipt of the property by the accused, together with the inference that arises from the possession of recently stolen property, to determine whether the accused knew or should have known from all the facts and circumstances that the property was stolen. To cut off the accused and prevent them from presenting this evidence effectively destroyed their ability to present a defense, apart from their own self-serving testimony. It was, therefore, error.

This was an extremely close case. We cannot say from the record before us that the exclusion of this important evidence was harmless error. Therefore, the judgment is reversed and the cause is remanded for a new trial.

DUNCAN and BYERS, JJ., concur.