2011 Ark. App. 637

**Robert Lee THOMAS, Jr., Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–1130.**

Court of Appeals of Arkansas.

Oct. 26, 2011.

---

Francis Parker Jones III, Benton, for appellant.

Dustin McDaniel, Atty. Gen., Rebecca B. Kane, Office of Atty. Gen., Little Rock, for appellee.

RAYMOND R. ABRAMSON, Judge.

⌐1⌐Following a bench trial, appellant Robert Lee Thomas, Jr., was found guilty of possession of a firearm by certain persons and theft by receiving property valued at less than $2500 but more than $500. Thomas was sentenced as a habitual offender to concurrent terms of 360 months' imprisonment for possession of a firearm by certain persons and 120 months' imprisonment for theft by receiving. On appeal, he argues that the trial court erred in denying (1) his motion to dismiss[1] the theft-by-receiving charge, in which he argued that the State presented insufficient evidence that he knew or should have known the firearm was stolen, and (2) his motion to suppress evidence obtained from his car. We find no error in ⌐2⌐the circuit court's denial of Thomas's motion to suppress and therefore affirm his felon-in-possession conviction, but we reverse and dismiss the theft-by-receiving conviction.

---

1. In his brief, appellant refers to his motion for directed verdict. As his trial counsel correctly noted, because this was a bench trial, the motion was in fact a motion to dismiss. *See* Ark. R.Crim. P. 33.1 (2011).

On the evening of January 24, 2009, Thomas was pulled over in a traffic stop after he was observed driving erratically. He was placed under arrest for driving on a suspended driver's license, and after a stolen firearm was found in his vehicle, he was also charged with possession of a firearm by certain persons and theft by receiving.

At trial on May 7, 2010, Corporal Michael Maxheimer of the Bryant Police Department testified that he received a call from dispatch and began following appellant at around 6:26 p.m. on January 24, 2009. He observed appellant driving erratically and initiated a traffic stop on Interstate 30 westbound in Benton after appellant drove off of the shoulder of the road. Thomas did not have identification with him, and Corporal Maxheimer learned from the Arkansas Crime Information Center that Thomas had a suspended driver's license. Corporal Maxheimer testified that while he was talking to Thomas, Thomas was trying to walk back to the driver's side of his car and into traffic, appeared unsteady on his feet, and had a white powdery substance on his nostrils.

Sergeant Jimmy Long arrived and directed Maxheimer to take Thomas into custody for driving on a suspended license and put him in the back of the police car. Maxheimer testified that he followed Bryant Police Department policy by first calling a wrecker to have the vehicle impounded and then conducting an inventory of its contents. Under the driver's seat of the vehicle Thomas had been driving was an automatic firearm. It was in plain view, partially sticking out from under the seat. Maxheimer completed the police department's auto-storage report, which listed "assorted CD's" and "assorted tools in trunk."

Sergeant Long testified that when he arrived on the scene, Corporal Maxheimer was concerned because Thomas was not staying at the back of the car. Sergeant Long spoke to Thomas and found him to be disoriented; he then told Corporal Maxheimer to take Thomas into custody. Long testified that he too noticed the white powdery substance on Thomas's nose; he also smelled burnt marijuana. Long recalled Corporal Dale Donham of the Arkansas State Police arriving shortly after he did and being the first one to notice the gun. Corporal Donham testified that, before Maxheimer and Long had conducted the inventory of the vehicle, he shined his flash light into the front seat and saw the butt of a gun under the driver's seat.

Following Donham's testimony, the court heard arguments regarding appellant's motion to suppress and denied the motion. The court based its decision on both the fact that the gun was in plain view and that it would have inevitably been discovered in the inventory:

I'm going to deny your motion [to suppress evidence] for two reasons. First, that there was testimony by both officers that the butt of the gun was partially preceding [sic] from under the seat and it could be seen. . . .

Secondly, if—I think it's pretty obvious this defendant wasn't going to go anywhere, and I think it is proper to do an inventory search, and it would have been discovered during that, regardless.

So, however the search was denoted, whether it be inventory or a search incident to arrest, I agree [that] the search incident to arrest probably would not fly in this case because he was in custody and the officers were not in danger, but it was going to be discovered one way or the other, either as a result of being in plain sight or as a result of the inventory.

Also testifying was the owner of the gun, who stated that his home in Sherwood was burglarized on May 18 or June 18, 2008. Seventeen handguns were taken, and one of them was the gun recovered from Thomas's vehicle. Most of the firearms had already been recovered. The victim testified that the burglar had been apprehended, and it was not Thomas.

At the close of the State's case, Thomas moved for dismissal of the theft-by-receiving charge on the ground that there was no evidence that he knew or should have known that the gun was stolen. He argued that six to seven months[2] did not qualify as "recently stolen" within the meaning of the statute. The court denied his motion and found him guilty of both charges. This timely appeal followed.

### I. *Sufficiency of the Evidence*

Thomas contends that the trial court committed reversible error when it denied his motion to dismiss the theft-by-receiving charge. He argues now, as he did below, that the State failed to introduce evidence that he knew or should have known that the firearm was stolen. A motion to dismiss at a bench trial, like a motion for directed verdict at a jury trial, is considered a challenge to the sufficiency of the evidence. *Cora v. State,* 2009 Ark. App. 431, at 3, 319 S.W.3d 281, 283. We will affirm a trial court's denial of the motion if there is substantial evidence, either direct or circumstantial, to support the verdict. *Id.* Substantial evidence is defined as evidence forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. *Id.* When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State, and only evidence supporting the verdict will be considered. *Gamble v. State,* 351 Ark. 541, 545–46, 95 S.W.3d 755, 758 (2003). Our supreme court has set out the standard of review for cases involving circumstantial evidence as follows:

> Circumstantial evidence may constitute substantial evidence to support a conviction. . . . The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. The question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict.

*Ross v. State,* 346 Ark. 225, 230, 57 S.W.3d 152, 156 (2001) (citations omitted).

A person commits theft by receiving when he receives, retains, or disposes of stolen property of another person, knowing it was stolen or having good reason to believe it was stolen. Ark.Code Ann. § 5–36–106(a) (Repl.2006). "The unexplained possession or control by the person of recently stolen property" will "give rise to a presumption that a person knows or believes that property was stolen." Ark.Code Ann. § 5–36–106(c)(1). The proper test of recency is whether the time lapse between the theft and the accused's possession of the property is sufficiently short, given the circumstances of the case, to preclude the possibility of a transfer of the stolen property from the thief to an innocent party.[3] *E.g., State v.*

---

2. The length of time was actually a little over seven or eight months.

3. The dissent concludes that appellant was not an innocent party because of his rather extensive criminal history. In this context, however, innocence means that the receiving party has no knowledge or reason to believe the property is stolen, and is not a reference to his or her criminal past.

**540**

*Langdon,* 110 S.W.3d 807, 814 (Mo.2003); *State v. Anderson,* 738 S.W.2d 200 (Tenn. Crim.App.1987). *See also* Annotation, "What constitutes 'recently' stolen property within rule inferring guilt from unexplained possession of such property," 89 A.L.R.3d 1202 (1979). The purpose of the recency requirement with respect to the inference of guilt is to insure that the party found in possession of the stolen property is aware of the stolen nature of the goods in his possession. *Anderson,* 738 S.W.2d at 202. The longer the period of time since the theft the more doubtful becomes the inference which may reasonably be drawn from unexplained possession. *Id.*

 Here, the owner of the stolen firearm testified that it had been taken from his home on either May 18, 2008, or June 18, 2008—making the time between the gun being stolen and Thomas's arrest a little more than seven or eight months. There was no evidence regarding how the gun came to be in Thomas's possession. Thomas argues that the theft in this case was not recent enough to give rise to a presumption that he knew the property was stolen and no other evidence points to any reason he should have known that it was stolen—for example, the serial number remained intact. At issue is whether the gun can be considered "recently stolen" so that the statutory presumption arises to support a finding of guilt beyond suspicion or conjecture. We hold that under the facts of this particular case, the presumption is inapplicable.

In *Williams v. State,* 93 Ark. App. 353, 219 S.W.3d 676 (2005), this court held that the evidence was sufficient to allow the jury to find that the defendant knew or had reason to believe that the gun was stolen because he was in unexplained possession of a gun that had been discovered missing four months earlier. In that case, the defendant first ignored an officer who

approached him at a service station, then told officers to leave him alone. The officers discovered that the defendant was concealing a gun in his hand. The court concluded that a lapse of four months, considered along with the affirmative effort at concealment, was not long enough to hold as a matter of law that it could not be considered recent.

On the other hand, in *Doubleday v. State,* 84 Ark. App. 194, 138 S.W.3d 112 (2003), this court held that the statutory presumption for recently stolen property was not applicable where the trailer at issue had been reported stolen nearly fourteen months before it was found in the defendant's possession.

 Our supreme court has explained that factors other than the passage of time are relevant to determining whether an item was recently stolen:

> The nature of the property alleged to have been stolen, the actions of the defendant and the nature of his claim thereto, if he subsequently makes an assertion of title, and all the circumstances surrounding the particular case, should be taken into consideration in determining whether the possession of the property was at the time after it was recently stolen, or whether it was so remote that it should not be considered that it was recently stolen.

*Wiley v. State,* 92 Ark. 586, 591, 124 S.W. 249, 251 (1909). We acknowledge that Thomas was a felon who could not legally possess a gun. That fact, however, has no bearing on whether he was in possession of "recently stolen" property—a fact necessary in this case to support a finding of guilt on the separate charge of theft by receiving. Having knowledge or good reason to believe that the property in the defendant's possession is stolen is an essential element of theft by receiving. *See Reeves v. Mabry,* 480 F.Supp. 529

(W.D.Ark.1979); *Eaton v. State*, 98 Ark. App. 39, 249 S.W.3d 812 (2007). The requisite intent is presumed only when the defendant is in the unexplained possession of *recently stolen* property—a term not defined by our statute. We hold that, given the circumstances of this case, a little more than seven or eight months is too long, without more, to raise the statutory presumption applicable to recently stolen property. Therefore, we reverse and dismiss appellant's conviction for theft by receiving. We do not intend to draw a bright line regarding what can be considered recently stolen for purposes of the theft-by-receiving statute; such matters should be resolved on a case-by-case basis.

## II. *Motion to Suppress*

Thomas also contends that the trial court erred in denying his motion to suppress the gun found in his car. When a trial court's denial of a motion to suppress is challenged, the reviewing court makes an independent examination of the issue based on the totality of the circumstances and views the evidence in the light most favorable to the State. *Benson v. State*, 342 Ark. 684, 687, 30 S.W.3d 731, 733 (2000). We reverse only if the decision to deny the motion to suppress was clearly against the preponderance of the evidence. *Id.*

On appeal, Thomas does not challenge the legality of the traffic stop. Rather, he contends that the warrantless search of his car violated his Fourth Amendment rights and that the inventory search was a "guise." Thomas points out that the police report indicates that the gun was discovered "[w]hile conducting a search incident to an arrest and inventory." He argues that the officer actually considered the search as one incident to arrest, and therefore the case should be analyzed under *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which addresses the search-incident-to-arrest exception to the

warrant requirement. Appellant fails, however, to address the second ground the circuit court cited for denying the motion to suppress—that the gun would have inevitably been discovered during an inventory search. Our supreme court has held that, where the circuit court bases its decision on two independent grounds and appellant challenges only one ground on appeal, the appellate court will affirm without addressing either basis of the circuit court's decision. *See Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002) (citing *Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989)). Therefore, we affirm appellant's conviction for being a felon in possession of a firearm without addressing the merits of his argument concerning the denial of the motion to suppress evidence.

Affirmed in part; reversed and dismissed in part.

PITTMAN, GLADWIN, ROBBINS, and MARTIN, JJ., agree.

WYNNE, GRUBER, HOOFMAN, and BROWN, JJ., dissent.

RITA W. GRUBER, Judge, dissenting.

I agree with the majority's decision in this case to affirm the circuit court's denial of the motion to suppress. I dissent only from the majority's finding that the presumption applicable to recently stolen property did not arise under the facts of this case because the time was too remote.

A person commits the offense of theft by receiving if he or she receives, retains, or disposes of stolen property of another person, knowing that it was stolen or having good reason to believe that it was stolen. Ark.Code Ann. § 5-36-106(a) (Repl.2006). The unexplained possession or control by a person of recently stolen property gives rise to a presumption that he knows or believes that it was stolen. Ark.Code Ann. § 5-36-106(c)(1) (Repl.2006). The issue

of recently stolen property requires consideration of the passage of time; the nature of the property; the defendant's actions and the nature of any claim of title he makes, should he assert title; and all the circumstances surrounding a particular case. *Wiley v. State,* 92 Ark. 586, 591, 124 S.W. 249, 251 (1909); *Williams v. State,* 93 Ark. App. 353, 219 S.W.3d 676 (2005); *Doubleday v. State,* 84 Ark. App. 194, 138 S.W.3d 112 (2003).[1]

The majority acknowledges the fact that Thomas could not legally possess a gun,[2] and it fairly summarizes facts regarding his behavior when officers stopped the car and discovered the stolen gun under his seat. The majority's reference to a "test of recency," *State v. Langdon,* 110 S.W.3d 807 (Mo.2003), has little applicability here, where we must decide whether the State was entitled to the presumption that the gun Thomas possessed was recently stolen. The majority cites the authority of the *Langdon* court's decision, which discussed the test of recency in order "to preclude the possibility of a transfer of the stolen property from the thief to *an innocent party.*" (Emphasis added.) The *Langdon* court noted that, unlike in some other states, the mere unexplained possession of recently stolen property in Missouri gave no rise to an inference that the possessor had received stolen property.[3]

Viewing the evidence in the light most favorable to the State, as we are required to do, I note additional relevant evidence: Thomas was a five-time convicted felon who was prohibited from possessing a firearm, and his past convictions included aggravated assault and felony possession of a firearm, for which he was on probation when the gun was found under his seat in the car that he had been erratically driving. From this evidence, the fact-finder could have concluded that Thomas possessed a recently stolen gun and that its unaltered condition was of little import. Considering all the circumstances in this case, Mr. Thomas was not an innocent party. I would affirm the trial judge's ruling that seven or eight months was not too distant in time to find that the firearm was recently stolen.

WYNNE, HOOFMAN, and BROWN, JJ., join in this dissent.

WAYMOND M. BROWN, Judge, dissenting.

I must respectfully dissent from the majority holding in this case.

Arkansas Code Annotated section 5–36–106(a) (Repl.2006) provides that a person commits theft by receiving when he receives, retains, or disposes of stolen property of another person, knowing it was stolen or having good reason to believe it was stolen. The statute further provides that the unexplained possession or control by the person of recently stolen property gives rise to a presumption that a person knows or believes that property was stolen.[1] In this case, the appellant was found to be in possession of a firearm seven to eight months after it was stolen, and although the legislature declined to define "recently stolen," the majority has taken liberty to do so, drawing upon previous

---

1. Although the State was not entitled to the statutory presumption when the defendant possessed a utility trailer stolen fourteen months earlier, there was evidence from which the fact-finder could have concluded that Doubleday knew or had good reason to know that the trailer was stolen. *Doubleday,* 84 Ark. App. 194, 138 S.W.3d 112.

2. No testimony was presented regarding from whom Thomas obtained the firearm.

3. Under the pertinent statute, Mo. Ann. Stat. § 570.080(4)(d) (West 2011), receiving stolen property is a class C felony if "[t]he property appropriated includes … any firearm."

1. Ark.Code Ann. § 5–36–106(c)(1).

holdings by this court. Namely, in *Williams v. State*,[2] this court held that four months between theft and apprehension was recent enough to allow presumption of the necessary mens rea, but in *Doubleday v. State*[3] we held that a lapse of fourteen months was too long. Based on those cases, my esteemed colleagues have determined that "a little more than seven to eight months is too long, without more, to raise the statutory presumption applicable to recently stolen property."

I find the majority's reasoning lacking for more than one reason. First, in the absence of guidance from the legislature, the court is engaging in an amorphous and arbitrary exercise, propping up the statute with temporal bookends and feeling its way around the edges of the law until, like Goldilocks in the fabled house of bears, it finds a formula that is "just right." Second, although the majority claims that it does "not intend to draw a bright line regarding what can be considered recently stolen for purposes of the theft-by-receiving statute," that is precisely what it has done. The bottom line of the majority holding in this case is that a theft-by-receiving conviction can be evaded by concealing stolen goods (or stolen goods knowingly received) for seven or eight months, and then, at trial, declining to offer an explanation for possession of them.

Moving from general to specific concerns, the majority is wrong to say that there were no circumstances present in this case to give rise to a presumption that the appellant knew or had good reason to believe the firearm in his possession was stolen. Mr. Thomas was a five-time convicted felon who was prohibited from possessing a firearm and would have been unable to legally obtain one, and he was on probation when the gun was found under the seat of the car he had been driving. There were no passengers in the car. The absence of an active effort to conceal the gun from the police, such as occurred in *Williams v. State*,[4] holds little weight in light of the fact that when he was stopped, Mr. Thomas was clearly intoxicated, had white powder on his nostrils, and almost walked into traffic. Under these circumstances, the fact finder could place more weight on the fact that Thomas' possession of the gun was both illegal and unexplained, and thereby arrive at the common-sense conclusion that, as provided under the statute, Thomas knew or had good reason to believe the gun was stolen. I would, therefore, affirm the trial court's ruling that the statutory presumption applied.

2. 93 Ark. App. 353, 219 S.W.3d 676 (2005).

3. 84 Ark. App. 194, 138 S.W.3d 112 (2003).

